UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CERTAIN UNDERWRITERS OF LLOYDS,
LONDON,

        Plaintiff,

v.

        Case Number 10-14727
        Honorable David M. Lawson

US INDUSTRIAL SERVICES, LLC,
MARIA KATTULA, ROBERT KATTULA,
FIFTH THIRD MORTGAGE-MI LLC,
FEDERAL NATIONAL MORTGAGE
ASSOCIATION, UNITED STATES OF
AMERICA, TAJ GRAPHICS ENTERPRISES,
LLC, A.T.L. RESIDENTIAL, L.L.C.,
SAFARI CONSTRUCTION COMPANY, INC.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS FIFTH THIRD MORTGAGE AND FEDERAL NATIONAL MORTGAGE ASSOCIATION AND DENYING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT UNITED STATES OF AMERICA**

        This case was commenced by plaintiff Certain Underwriters of Lloyds, London as an interpleader action, with Lloyds seeking to deposit in Court the proceeds of a hazard insurance policy on commercial real estate that was the subject of foreclosure proceedings at the time the covered loss was incurred. Lloyds asked the Court to determine which of several potential claimants were entitled to insurance proceeds from water damage that occurred at 211 Walnut Street, Suite 1, Rochester, Michigan. The property was owned by Maria Kattula and US Industrial Services, LLC. Fifth Third Mortgage Company held a mortgage on the property. The property was insured, and Fifth Third Mortgage was named as a loss payee in the policy. After the mortgage was recorded, the United States recorded a tax lien against all property of Maria Kattula and US Industrial

Services, LLC. Maria Kattula and US Industrial Services, LLC defaulted on the mortgage, and Fifth Third Mortgage purchased the property at the foreclosure sale for less than the total amount of the debt. The day after purchasing the property, Fifth Third Mortgage transferred the property to Federal National Mortgage Association by quitclaim deed. About five months later, during the redemption period, water damage was discovered on the property. The claims of all the claimants save two have been resolved. Currently, Fifth Third Mortgage and Fannie Mae jointly claim the proceeds under both the mortgage and the insurance policy; the United States claims the proceeds under its tax lien.

These two remaining groups filed cross motions for summary judgment. The Court heard oral argument on November 8, 2011 and now concludes that although Fifth Third cannot assume loss payee status as an insured because it did not have an interest in the property at the time of the loss, the assignment of rights to insurance proceeds in the mortgage contract both survives foreclosure and is deemed to predate the United States's tax lien. Therefore, Fifth Third Mortgage and its successor in interest, Federal National Mortgage Association, are entitled to the insurance proceeds up to the unpaid loan balance. The Court will grant Fifth Third Mortgage's and Federal National Mortgage Association's motion for summary judgment and deny the United States's motion for summary judgment.

I.

The following facts are not in dispute. Maria Kattula acquired commercial property located at 211 Walnut Street, Suite 1, Rochester, Michigan, on January 27, 2006. On the same day, Ms. Kattula granted a $315,000 mortgage to defendant Fifth Third Mortgage-MI, LLC as security for

a loan; that mortgage was assigned to defendant Fifth Third Mortgage Company on October 16, 2008 ("Fifth Third Mortgage").

Plaintiff Lloyd's issued a commercial property hazard insurance policy covering the period between January 27, 2009 and January 27, 2010 to US Industrial Services, LLC and Maria Kattula. The insurance policy provided a $500,000 liability limit for property damage, subject to a $1,000 deductible, and a $42,000 limit for business income loss, including rental value. The policy named Fifth Third Mortgage as a loss payee. The Loss Payable Provision of the policy reads:

> C.  LENDER'S LOSS PAYABLE
> 1.  The Loss Payee shown in the Schedule or in the declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:
> a. Warehouse receipts;
> b. A contract for deed;
> c. Bills of lading;
> d. Financing statements; or
> e. Mortgages, deeds of trust, or security agreements.
> 2.  For Covered Property in which both you [the insured] and a Loss Payee have an insurable interest:
> a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.
> b.  The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.
> c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:
> (1)  Pays any premium due under this Coverage Part at our request if you have failed to do so;
> (2)  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and
> (3)  Has notified us of any change in ownership, occupancy, or substantial change in risk known to the Loss Payee.
> All of the terms of this Coverage Part will then apply directly to the Loss Payee.
> d.  If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
> (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

> (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.
> At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

Def. Fifth Third's Mot. for Summ. J., Ex. C.

On February 4, 2008, a Notice of Federal Tax Lien against Robert and Maria Kattula was recorded, and on March 25, 2008, Notices of Federal Tax Lien against US Industrial Service, LLC and Maria Kattula as alter-egos, nominees, or transferees of Robert Kattula were recorded. As of June 22, 2009, the total amount claimed to be outstanding on the mortgage loan for the property was $340,521.61. The loan went into default, and Fifth Third Mortgage foreclosed on the mortgage and purchased the property at the sheriff's sale on August 11, 2009 for $254,375. The next day, August 12, 2009, Fifth Third Mortgage conveyed the property to defendant Federal National Mortgage Association ("Fannie Mae") by quitclaim deed. The sixth-month redemption period expired on February 11, 2010; Maria Kattula did not redeem the property during that period.

On approximately January 4, 2010, about one month prior to the expiration of the statutory redemption period, the property suffered water damage. An insurance adjuster assigned by Lloyd's recommended a payment of $84,311.61 for that damage, and the plaintiff agreed to tender that amount to court. After a construction lien was satisfied with the consent of all parties, $65,811.62 in insurance proceeds remain. Fifth Third Mortgage and Fannie Mae (collectively the "Fifth Third defendants") and the United States have claimed entitlement to the insurance proceeds and have filed cross motions for summary judgment.

## II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all

reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 249-50); *see also Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

Neither party suggests that there are material facts in dispute. Summary judgment under Rule 56, therefore, is a useful method of addressing an issue when the parties agree, as here, that there are no material facts in dispute and "the sole question at issue [is] a question of law." *United States v. Donovan*, 348 F.3d 509, 511 (6th Cir. 2003); *see also Wachovia Bank v. Watters*, 431 F.3d 556, 559 (6th Cir. 2005); *Progressive Corp. and Subsidiaries v. United States*, 970 F.2d 188, 190-91 (6th Cir. 1992).

The Fifth Third defendants argue first that the insurance policy names Fifth Third Mortgage as the loss payee, which, according to the policy terms, gives it the right to insurance proceeds as a result of damage that occurred after the foreclosure sale but before the redemption period expired. Second, the Fifth Third defendants argue that the mortgage contract governs the allocation of insurance proceeds and provides that rights to insurance proceeds after sale go to the lender. Third, the Fifth Third defendants argue that at the time of the damage to the property, the United States's lien attached only to the property of the taxpayer, which consisted of nothing more than the right to redeem from foreclosure sale, and thus the United States was not entitled to insurance proceeds.

The United States acknowledge that Fifth Third Mortgage was a loss payee to the insurance policy, but it insists that Fifth Third Mortgage's claim as a loss payee did not survive the foreclosure sale or the conveyance to Fannie Mae by quitclaim deed. In making that point, the United States characterizes the loss payment provision as an "ordinary mortgage clause," which, unlike a "standard mortgage clause," does not provide protection to the mortgagee after a foreclosure sale. The United States also contends that because a mortgage is extinguished at the time of the foreclosure sale, any rights Fifth Third claims thereunder are a nullity as well. Finally, the United States argues that the tax lien attached to the insurance proceeds as well as the real property, and

because the insurers have a responsibility to pay the insureds, the tax lien attached to those funds and has priority over all other claims.

### A. Fifth Third defendants' rights under the insurance policy

The general rule is that federal law governs the priority of tax liens that compete with other claims to property, *Aquilino v. United States*, 363 U.S. 509, 513-14 (1960), but state law defines the nature of the property interest to which the lien attaches, *United States v. Brosnan*, 363 U.S. 237, 240 (1960). The Fifth Third defendants contend their interest in the insurance proceeds derives from the insurance contract itself, which is a question that must be resolved under Michigan law.

In determining entitlement to insurance benefits, Michigan courts examine the language of the insurance policy and interpret it according to Michigan's principles of contract construction. *Singer v. American States Ins.*, 245 Mich. App. 370, 374, 631 N.W.2d 34, 37 (2001) (citing *Michigan Millers Mutual Ins. Co. v. Bronson Plating Co.*, 445 Mich. 558, 567, 519 N.W.2d 864, 868 (1994)). "An insurance contract must be read as a whole and meaning given to all terms." *Ibid.* (citing *Auto Owners Ins. Co. v. Churchman,* 440 Mich. 560, 566, 489 N.W.2d 431, 434 (1992)). "The language of the contract is to be given its ordinary, plain meaning and technical, constrained constructions should be avoided." *Ibid.* (citing *Bianchi v. Automobile Club of Michigan,* 437 Mich. 65, 71, n.1, 467 N.W.2d 17, 20 n.1 (1991); *Royce v. Citizens Ins. Co.,* 219 Mich. App. 537, 542, 557 N.W.2d 144, 147 (1996).

There is no question that Fifth Third Mortgage is a loss payee on the hazard insurance policy that covered the premises. But there are two types of loss payable clauses in insurance policies that protect lienholders. *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 383, 486 N.W.2d 600, 602 (1992). The first, an ordinary loss payable clause, "directs the insurer to pay the proceeds of

the policy to the lienholder, as its interest may appear, before the insured receives payment on the policy." *Ibid.* That type of clause does not create a contract between the lienholder and the insurer, and a breach of the insurance conditions by the insured (such as the failure to pay the premium, or failure to secure the premises after the loss) would prevent recovery by the lienholder. *Ibid.* The second type of loss payable clause, the standard mortgage clause, provides that the lienholder is not subject to the defenses available to the insurer against the insured. *Id.* at 384, 486 N.W.2d at 602-03.

A loss payable clause has been found to be a standard mortgage clause when it furnishes protection beyond that provided by an ordinary mortgage clause; for example, when it provides protection even if the mortgagor fails to comply with policy conditions. *Boyd v. General Motors Acceptance Corp.*, 162 Mich. App. 446, 457-58, 413 N.W.2d 683, 688 (1987), *overruled on other grounds by Foremost Ins. Co.*, 439 Mich. at 381, 486 N.W.2d at 601; *see also* 3 Lee R. Russ, *Couch on Insurance*, § 65:8 ("[T]he so-called 'standard' or 'union' mortgage clause . . . provides that the mortgagee shall be protected against loss from any act or neglect of the mortgagor . . . .").

The United States argues that the loss payable provision in Lloyd's insurance contract is an ordinary mortgage clause. The Court disagrees. One hallmark of a standard mortgage clause under Michigan law is that it provides greater protection to mortgagees than to mortgagors. Standard mortgage clauses typically state that a mortgagee can collect insurance proceeds even where a mortgagor cannot, such as in cases where damage is caused by the mortgagor's acts or neglect. *See Boyd*, 162 Mich. App. at 457-58, 413 Mich. at 688. The Loss Payable provision in the Lloyd's policy here plainly grants Fifth Third Mortgage greater protection than it provided to the mortgagors under the policy. The policy language, quoted above, states that the Loss Payee has a right to receive payment even if the insurer denies the mortgagor's claim "because of [the mortgagor's] acts

or because [the mortgagor] ha[s] failed to comply with the terms of the coverage part." Def. Fifth Third's Mot. for Summ. J., Ex. C. That term protects Fifth Third Mortgage even when the mortgagors could not recover under the policy. Therefore, Michigan courts would interpret the Loss Payable provision as a standard mortgage clause.

Because the Loss Payable provision is a standard mortgage clause, and Fifth Third's rights under the insurance policy are not dependent on the property owner's rights thereunder, it follows that Fifth Third's right to the insurance proceeds extended beyond the foreclosure sale. It is well-settled law in Michigan that a Loss Payable provision containing a standard mortgage clause constitutes a separate contract between the insurer and mortgagee that is not subject to most of the defenses an insurer might have against a mortgagor. *Citizens State Bank of Clare v. State Mut. Rodded Fire Ins. Co. of Mich.*, 276 Mich. 62, 67, 267 N.W.2d 785, 787 (1936); *Pink v. Smith*, 281 Mich. 107, 111, 274 N.W. 727, 729 (1937); *Booker T. Theater Co. v. Great Am. Ins. Co. of N.Y.*, 369 Mich. 583, 587-88, 120 N.W.2d 776, 777-78 (1963). "Thus, even in cases where the mortgagee . . . has become the fee owner of the insured property through foreclosure . . . the mortgagee . . . is generally held to be entitled to coverage under a policy's standard mortgage clause." *Singer*, 245 Mich. App. at 379-80, 631 N.W.2d at 40. That coverage generally "will not extend beyond the expiration of the mortgagor's period of redemption." *Consolidated Mrtg. Corp. v. American Sec. Ins. Co.*, 69 Mich. App. 251, 259, 244 N.W.2d 434, 438 (1976). But Michigan courts "do not think it is an unfair burden upon the insurer to continue coverage at homeowner's rates as long as there was a possibility that the mortgagor would redeem the property." *Id.* at 257, 244 N.W.2d at 437.

It is quite clear that the water damage on the property in this case occurred before the mortgagor's right of redemption expired, and therefore the Loss Payable provision still provided rights to the mortgagee. The wrinkle in this case derives from Fifth Third Mortgage's conveyance of its rights in the property to Fannie Mae after the foreclosure sale but before the loss occurred.

Fifth Third asserted at oral argument that the quitclaim deed was inconsequential because Fannie Mae did not acquire any rights under the quitclaim deed until the sheriff's deed ripened into full title when the redemption period expired. It may be true that Fannie Mae's right to fee title was inchoate while the redemption period was running, but it does not change the fact that the quitclaim deed was a conveyance that divested Fifth Third Mortgage of any rights in the property it did have at the time it tendered the deed. It is well-settled law in Michigan that a quitclaim deed "conveys a grantor's complete interest or claim in certain real property . . . ." *Michigan Dept. of Nat. Res. v. Carmody-Lahti Real Estate, Inc.*, 472 Mich. 359, 377-78, 699 N.W.2d 272, 283 (2005); *see also Roddy v. Roddy*, 342 Mich. 66, 69, 68 N.W.2d 762, 764 (1955); *Doelle v. Read*, 329 Mich. 655, 657, 45 N.W.2d 422, 423 (1951).

Michigan courts have held that "if the mortgagor conveys real property to a stranger, a new contract of insurance must be negotiated or the insurer must consent to an assignment. It is clear, therefore, that failure on the part of the mortgagee to give notice to the insurer of a 'change in ownership' under such circumstances will render the insurance policy inoperative . . . [I]n construing the Standard Mortgage Clause, courts have generally held that a transfer of title to a 'stranger' without giving notice to the insurer will invalidate the policy." *Consolidated Mrtg. Corp.*, 69 Mich. App. at 256-577, 244 N.W.2d at 437. *See also Ornatowski v. National Liberty Ins. Co. of Am.*, 290 Mich. 241, 246-67, 281 N.W. 449, 451 (1939).

More importantly, when Fifth Third quitclaimed its interest in the property to Fannie Mae, it no longer had an insurable interest in the property that would incur water damage five months later. Generally, in order to recover insurance proceeds, the claimant must have an insurable interest at the time of loss, and the existence of an insurable interest must be determined as of the date of loss. *See* Am. Jur. Insurance § 942. Moreover, the Loss Payable provision states that Lloyd's "will pay for covered loss or damage to each Loss Payee in their order or precedence, *as interests may appear*." Def. Fifth Third's Mot. for Summ. J. Ex. C (emphasis added). As a general rule, the right of parties to insurance proceeds is fixed at the time of the loss. *Booker T. Theater Co. v. Great Am. Ins. Co. of New York*, 369 Mich. 583, 591, 120 N.W.2d 776, 779 (1963). When the mortgaged property was damaged by water, Fifth Third Mortgage did not hold any interest in the property; it had quitclaimed whatever interest it had to Fannie Mae.

Because Fifth Third Mortgage did not have an interest in the property, and because an insurable interest must exist at the time of loss, Fifth Third Mortgage is not entitled to insurance proceeds under the Loss Payable provision.

### B.  Fifth Third defendants' rights under the mortgage

The mortgage contained an assignment of certain rights to the mortgagee, including certain rights to insurance proceeds. To determine whether Fifth Third Mortgage is entitled to the insurance proceeds under the assignment of rights in the mortgage, the Court must address three questions. First, did Maria Kattula and US Industrial Services, LLC (the mortgagors) have an insurable interest in the property at the time of the water damage so that they would have been able to collect insurance proceeds, if they had not assigned those rights? Second, did the mortgage contract

between Fifth Third Mortgage and the mortgagors transfer that interest to Fifth Third? Third, does the government's tax lien take priority over Fifth Third's interest in insurance proceeds?

### 1. The mortgagors' insurable interest

Under Michigan law, a mortgagor of a property has an insurable interest in that property while foreclosure proceedings are underway. A mortgagee also has an insurable interest during the redemption period. *Perkins v. Century Insurance Company, Limited, of Edinburgh, Scotland*, 303 Mich. 679, 682, 7 N.W.2d 106, 107 (1942); *cf. Consolidated Mrtg. Corp.*, 69 Mich. App. at 257, 244 N.W.2d at 437 ("We do not think it is an unfair burden upon the insurer to continue coverage at homeowner's rates as long as there was a possibility that the mortgagor would redeem the property."). The mortgagors had a right to redeem the property for six months after the date of the foreclosure sale. Mich. Comp. Laws § 125.1449j(4). The parties do not dispute that the damage occurred during the redemption period, while the mortgagors had a right to redeem the property. Therefore, under Michigan law, the mortgagors had an insurable interest in the property at the time the damage occurred.

### 2. Transfer of mortgagors' interests in insurance proceeds

Second, the Fifth Third defendants contend that the mortgage language quoted above explicitly states that in the event of a foreclosure, the mortgagors' right to insurance proceeds are assigned to the mortgagee. The United States responds that even if the mortgage says that, the mortgage was extinguished by the foreclosure sale, the mortgage does not survive as a lien, and the government's tax liens have priority over Fifth Third's contract claim. Both parties cite *Emmons*

*v. Lake States Insurance Company*, 193 Mich. App. 460, 484 N.W.2d 712 (1992), in their discussion of whether the assignment of the insurance proceeds in the mortgage survived the foreclosure sale.

In *Emmons*, the Michigan Court of Appeals examined an assignment clause that was similar in most respects as the one in Lloyd's insurance policy. The mortgaged property in that case was damaged by fire before the foreclosure sale. The court found that the assignment clause "created an equitable assignment of a future right. In equity, a present assignment of money having a potential existence but not yet due will operate on the fund as soon as it is acquired." *Emmons*, 193 Mich. App. at 464, 484 N.W.2d at 714. Significantly, the court held that "[t]he assignment was collateral security for the mortgage debt." *Ibid.* The court found that "the assignment survived foreclosure" but "the debt did not." *Ibid.* The court held that "the bank's interest in the insurance proceeds vested at the time of the fire," but because the bank had purchased the property at a foreclosure sale for an amount equal to the amount remaining on the mortgage, the bank's interests in the insurance proceeds "expired upon satisfaction of the debt at the foreclosure sale." *Ibid.*

For the purpose of the present case, the key holding in *Emmons* is that the assignment in the mortgage of the insurance proceeds amounted to collateral security for the mortgage debt, and that assignment transcended the foreclosure sale. The point of distinction with the present case is that here, a portion of the debt — one that exceeds the amount of available insurance proceeds — remains after the foreclosure sale. The concern animating the holding in *Emmons* that the bank was not entitled to assigned insurance proceeds appears to be that allowing both assignment of insurance proceeds and a full-debt bid at the foreclosure sale would bestow on a mortgagee a double recovery. However, that concern is absent here: it is undisputed that Fifth Third purchased the property at the

foreclosure sale for $86,146.61 less than the total debt remaining on the property, and the insurance proceeds that remain total $65,811.82.

The United States argues that the pronouncement in *Emmons* that the assignment survives the foreclosure sale is *obiter dictum*. The Court disagrees. That determination was necessary to the decision in the case. Moreover, the United States has not cited any contradictory authority. This Court believes that Michigan courts would hold that an assignment of an interest in the insurance proceeds contained in a mortgage would survive a foreclosure sale, and therefore Fifth Third is entitled to the insurance proceeds under the assignment clause in the mortgage, because the insurance proceeds are collateral security for the debt otherwise secured by the undamaged property, and the debt remains unpaid. That right in turn was assignable to Fannie Mae.

The United States attempts to distinguish *Emmons* because the foreclosure sale in that case came after the fire loss. However, that court did not state that the bank's interest *must* have vested prior to the sale in order for the assignment to survive foreclosure. Instead, it seems to suggest the opposite: that the assignment clause functions as collateral security on the debt that may be collected in the event that, as here, the debt was not satisfied at the foreclosure sale. And it bears repeating that the court specifically found that the assignment survived foreclosure. *Emmons*, 193 Mich. App. at 464, 484 N.W.2d at 714. Here, because the mortgagors had an insurable interest in the property at the time of the damage, the right to insurance proceeds was assigned to Fifth Third by the mortgage contract to act as collateral security for the debt. Because the foreclosure sale did not provide full satisfaction of the debt, the assignment in the mortgage survived the sale. Fifth Third, therefore, had a right to the insurance proceeds under the mortgage contract as long as the mortgagors had an insurable interest in the property.

3. Priority of the tax lien

The United States's tax lien attached to all property of Maria Kattula and US Industrial Services, LLC, including property acquired after the attachment of the tax lien. 26 U.S.C. § 6321; *Glass City Bank of Jeanette, Pennsylvania v. United States*, 326 U.S. 265, 268-69 (1945). It is undisputed that the mortgage was recorded before the United States's tax lien, and therefore Fifth Third's security interest in the property had priority over the tax lien. *United States By and Through I.R.S. v. McDermott*, 507 U.S. 447, 449 (1993) ("Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common law principle that 'the first in time is the first in right.'" (internal citation omitted)).

The remaining question is whether the assignment of insurance proceeds predated the tax lien. The United States argues that the assignment is a contract right that did not arise until the loss occurred, and the tax lien preceded the loss. But that argument fails to recognize that the assignment of insurance proceeds served as collateral on the original debt. When viewed in that light, it is logical that the assignment occurred at the same time as the original security lien — represented by the mortgage — was recorded. Therefore, even though no loss had occurred yet, Fifth Third's interest in the insurance proceeds has priority over the United States's interest in the proceeds.

That conclusion is consistent with Michigan statutory law as well. Michigan's version of Article 9 of the Uniform Commercial Code suggests that the Fifth Third defendants have a right to insurance proceeds deriving from the mortgaged property. "The attachment of a security interest in collateral gives the secured party the right to proceeds provided by section 9315. . . ." Mich. Comp. Laws § 440.9203(6). The statute defines "proceeds" to include, "[t]o the extent of the value

of the collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of . . . damage to, the collateral." Mich. Comp. Laws § 440.9102(lll)(iv). It is undisputed that Fifth Third had a security interest in the collateral — that is, the property — that attached prior to the United States's tax lien.

*Warner v. Tarver*, 158 Mich. App. 593, 405 N.W.2d 109 (1986), also supports that conclusion. In that case, the defendant made an insurance claim for damage to the property, which initially was denied by the insurance company; but Tarver, the owner of the insured business, hired an attorney who obtained a jury verdict in the his favor and against the insurance company. However, before Tarver collected the insurance proceeds, the Warners, plaintiffs in this case, filed an action to foreclose on a land contract and a secured note that they held on the defendant's business property; they asserted rights they had in the insurance proceeds. Several other secured creditors also emerged to claim a share of the proceeds. Defendant Tarver's attorney argued that he had an attorney's lien that was superior to the other creditors. The court found that "the [plaintiff's] security interests in the real property continue[d] in the insurance proceeds which result from the destruction of the real property." *Warner*, 158 Mich. App. at 597, 405 N.W.2d at 111. The court found that under the general rule, the plaintiffs' security interest was superior to the attorney's lien because it was first in time. *Id.* at 598, 112. Similarly, in this case, the security interest in the property that eventually was damaged by water extended to the insurance proceeds on that property.

Finally, as the Fifth Third defendants note, the purpose of insurance is to compensate an owner for losses to his property. The rule that an insurable interest must exist at the time of loss for the insurance contract to be effective is intended to guard against the moral hazard that arises when the beneficiary of an insurance policy has no incentive to prevent and guard against damage to the

covered property. In this case, Fannie Mae had an incentive to keep the property in good condition to preserve its resale value. If Fifth Third Mortgage had not transferred its interest in the property to Fannie Mae, it would have had a similar incentive. In fact, but for Fifth Third's ill-timed transfer to Fannie Mae, it is beyond dispute that Fifth Third Mortgage would have been entitled to the insurance proceeds under both the mortgage *and* the Loss Payable provision. There likewise is no doubt that Maria Kattula and US Industrial Services, LLC would not have been entitled to those proceeds. By its tax lien, the United States would have an interest in the property of Maria Kattula and US Industrial Services, LLC, but that property does not include the insurance proceeds they assigned to the mortgagee when they first executed the mortgage.

III.

Although the Fifth Third defendants do not have rights to the proceeds stemming from the Loss Payable language in Lloyd's insurance policy, the Fifth Third defendants, particularly Fannie Mae, are entitled to the insurance proceeds under the mortgage contract.

Accordingly, it is **ORDERED** that the motion for summary judgment by defendants Fifth Third Mortgage and Federal National Mortgage Association [dkt. #29] is **GRANTED**.

It is further **ORDERED** that the motion for summary judgment by defendant United States of America [dkt. #31] is **DENIED**.

It is further **ORDERED** that defendants Fifth Third Mortgage and Federal National Mortgage Association are entitled to the remaining funds deposited in the Court's registry by plaintiff Certain Underwriters of Lloyds, London.

                                                   s/David M. Lawson  
                                                   DAVID M. LAWSON  
                                                   United States District Judge

Dated:   November 10, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 10, 2011.

                                      s/Deborah R. Tofil  
                                      DEBORAH R. TOFIL